Ruffin, Chief Justice,
 

 after stating the pleadings and proofs as above, proceeded as follows: For the purposes of the present suit, it is unimportant whether the plaintiff made to his agent, Elijah Pickard, a formal letter of attorney or not, provided it sufficiently appear that he otherwise gave him authority to contract in his name for the conveyance of the plaintiff’s interests in the land and slaves, or to submit the controversy to arbitration. To the deeds made to the defendant, a letter of attorney would be requisite to impart validity as legal instruments; and if the plaintiff were proceeding at law, there might be more difficulty in substantiating the defence. But the equity of the bill is fully answered by any written or even parol authority to make sale of the slaves; because that is an act which may be done without deed; and, therefore, the authority to do it may be conferred without deed.
 

 The plaintiff’s letters, which remain and have been proved in the cause, create in themselves the competent power to do every thing but execute conveyances. It is a quibble on the terms found in parts of the letter of July, 1832, to say, as
 
 the
 
 bill does, that the plaintiff did not thereby confer any authority, but only expressed an intention to do so
 
 in futuro.
 
 The meaning on the other hand, is plain enough, that he thereby appointed Elijah Pickard his agent, as far as it could
 
 *436
 
 j3e done by letter; but that he had intended, and did then in-tend, to make that appointment in a manner the most formal, as soon as he could have the instrument prepared, whereby nSent w°uld have power to do every thing which his principal might; that is to say, fully complete, as well as enter into, an agreement. The very object of writing at that time, requires- this construction of the letter. Why did the plaintiff write “ immediately”? To let the other know that his purpose was to appoint him his attorney? Certainly not; for he says that a friend had informed him that the other would attend to the business as his agent; and moreover, he had his title papers sent to him forthwith. Then, the plaintiff wrote at that time, that he might have an agent upon the spot ready to act immediately for the preservation of his rights — to whom, for the purpose of meeting formal objections from the other side, he would remit an indisputable commission, delegating “ unlimited power” in express terms. But, the agent was not to await the arrival of that instrument, before doing any thing; for, besides similar expressions elsewhere, the letter, after mentioning the plaintiff’s acceding to Brewer’s proposition for a reference, adds, “but of all these matters
 
 I leave
 
 you to judge,
 
 requesting
 
 you
 
 to settle
 
 it in the safest, cheapest, and
 
 quickest way."
 
 ' These words import a preserit, and not a future purpose to constitute the a.gent; and that too, with the view'of a cheap and expeditious ■adjustment, instead of the more dilatory and expensive remedy by litigation.
 

 But the Court is satisfied, from the evidence, that the power of attorney, on the want of which the bill so much insists, was in fact executed and sent by the plaintiff. • Why should it not have been? It is pretended that the plaintiff was not certain of the agent’s name. . But that cannot account for his waiting two years without further enquiry, and when he .seems to have been so anxious about his rights, and so fear-? ful of the loss of the slaves. In the next of the letters filed, there is no intimation that he had been prevented by that cause, from sending the power; nor that he had not received a reply to his first letter, accepting the proffered agency. It purports indeed to be written by one who was ignorant of
 
 *437
 
 what had been done in the businsss; and might have been designedly thus written, after the plaintiff had received advices from his ag.ent and counsel, which they gave him. But, the strong and conclusive circumstances are, that the agent swears that, besides those letters, he received two others at least, and under cover of them, papers, among which purported to be a power of attorney, which, when by him submitted to the respectable counsel employed by him, he was advised was a regular and sufficient power; and the counsel also swears that, although he cannot now remember examining or seeing such a paper, he was, at the time of transacting the business, satisfied that the agent had such authority; and he is sure that, if there had not been such an authority, he could not have suffered it to go on. Now, when to that testimony are added the facts, that the plaintiff had access to the agent’s papers in his absence, and by his own admission, took away some of the letters which he wrote, and still retains them; and that the letters thus suppressed, are those which, according to the course of the correspondence, would have enclosed the letter of attorney and particularly mentioned it, we are furnished with grounds of the strongest presumption against the plaintiff. That presumption is greatly fortified by other parts of the correspondence and the declarations of the plaintiff. In his first letter to his counsel, he stated that “ he
 
 had
 
 appointed Elijah Pickard his agent, with
 
 full
 
 authority to settle the business by suit, arbitration, or otherwise.” In the letter of the 20th November, 1834, in which he first admits the receipt of advice of the settlement, he firmly expresses his dissatisfaction therewith, and his wish to get rid of it; but he does not intimate a want of authority in those who acted for him, as aground fordoing so. On the contrary, he admits himself to be bound by the award, provided the arbitrators were sworn, and otherwise proceeded in the way which he supposed to be legal. Again: just before he commenced this litigation, the plaintiff explicitly admitted to the same counsel that he, the plaintiff,
 
 had authorised
 
 the settlement; and stated his objection to be to the 'sum allowed, and not to the want of authority. It may be safely assumed, "we think, that this admission never would have been retract
 
 *438
 
 ed, but for the opportunity the plaintiff probably afterwards had, and used, for preventing the agency of Elijah Pickard being established by the production of the instrument which confen’e<^ iL At all events, the circumstances are of a character which compel the Court to conclude, that the plaintiff, by his deed and letter of attorney, in 1832, appointed Elijah Pickard his agent, with authority to do the several acts alleged in the pleadings to have been done by him, in the name of the plaintiff. The bill must, therefore, be dismissed with costs.
 

 Per Curiam. Bill dismissed.